**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **09-03768-hb**
Adversary Proceeding Number:  **09-80118-hb**

## SUMMARY JUDGMENT ORDER

The relief set forth on the following pages, for a total of 15 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/28/2012**



US Bankruptcy Judge
District of South Carolina

Entered: 02/29/2012

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 09-03768-B |
| | ) | |
| Earth Structures, Inc. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 09-80118-hb |
| | ) | |
| | ) | |
| Bank Meridian, N.A. and SCBT, N.A., as | ) | |
| successor in interest to BankMeridian, | ) | |
| | ) | |
| Plaintiffs, | ) | **SUMMARY JUDGMENT ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Ultra Holdings, LLC, Earth Structures, | ) | |
| Inc., Steven R. Wicker, Timothy Bailey, | ) | |
| First Citizens Bank and Trust Co., Inc., | ) | |
| and the United States of America by and | ) | |
| through its Agency the Department of the | ) | |
| Treasury, Internal Revenue Service, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** came before the Court pursuant to SCBT, N.A.'s Motion for Summary Judgment (Doc. No. 103) (the "Motion") and responses thereto.[1] SCBT, N.A. ("SCBT") seeks judgment as matter of law in its favor on each of its causes of action and for judgment with regard to the counterclaims and defenses asserted by Defendants Earth Structures, Inc. ("ESI" or "Debtor") and Steven R. Wicker ("Wicker").[2] After reviewing the pleadings and considering the

---

[1] ESI responded to the Motion (Doc. No. 106), and Wicker did not. The Court received correspondence from Mr. Wicker indicating that the Response to SCBT's Motion for Summary Judgment was intended to be a joint filing for ESI and Wicker personally. (Doc. No. 117).

[2] ESI and Wicker may be referred to hereinafter collectively as the "Defendants." The only parties that continue to appear for matters related to this adversary proceeding are SCBT, Wicker, and ESI. All causes of action against Defendants Timothy Bailey were stayed by the filing of a voluntary petition for Chapter 7 relief. *See* Doc. No. 1, C/A No. 10-03470-hb, filed May 14, 2010. For a detailed review of the procedural history, *see* Doc. No. 43, entered Oct. 26, 2010.

arguments presented by the parties at the hearing, the Court concludes that SCBT's Motion should be granted in part.

## I. SUMMARY OF THE FACTS[3]

In the remaining causes of action presented by this lawsuit, Plaintiff SCBT seeks a judgment against Defendants to collect on certain loans made to and/or guaranteed by Defendants.[4] Defendants raised certain legal and equitable defenses challenging the enforceability of the loan documents.[5] Defendants also counterclaimed asserting various causes of action alleging that Plaintiff BankMeridian, N.A. ("BankMeridian") breached its own contracts and committed fraud with regard to representations made about the loan documents.[6]

Beginning in late 2006, Plaintiff BankMeridian began a banking relationship with Ultra Holdings, LLC ("Ultra Holdings"). Wicker and Defendant Timothy Bailey both held an ownership interest in ESI and Ultra Holdings and are guarantors of loans issued by BankMeridian to their companies. BankMeridian extended several loans to these Defendants, secured by

---

[3] The parties presented numerous portions of the record to support and defend their positions. Specific factual references will be made throughout the Order.

[4] This matter came to this Court upon the Notice of Removal filed by the Debtor ESI of C/A No. 2009-CP 42-0793, a proceeding pending in the Spartanburg County Court of Common Pleas. (Doc. No. 1). That state court action included various causes of action more appropriately addressed to a non-bankruptcy court. On October 29, 2009, the Court entered an Order Granting Bank Meridian, N.A.'s Motion for Remand, abstaining from certain matters raised in the original complaint and responses thereto, and retaining the following causes of action:
> Second Cause of Action (Breach of Note 2); Third Cause of Action (Foreclosure of Mortgage 1 Encumbering Real Property); Tenth Cause of Action (Breach of Note 4); Eleventh Cause of Action (Breach of Security Agreement 1 and Security Agreement 2 and Collection of Accounts); Twelfth Cause of Action (Foreclosure of Mortgage 3 Encumbering Real Property); Thirteenth Cause of Action (Foreclosure of Mortgage 4 Encumbering Real Property); Sixteenth Cause of Action (Collection of Rents); Seventeenth Cause of Action (Injunction—Accounts Receivables); Eighteenth cause of Action (Injunction—Rents) and Nineteenth Cause of Action (Accounting).

(Doc. No. 13 at 7). Thereafter, Defendants filed additional pleadings raising defenses and counterclaims.

[5] The Defendants' Amended Answers and Counterclaims contain the following defenses: unclean hands, estoppel and unjust enrichment (Third Defense), fraud in the inducement (Fourth Defense), and duress (Fifth Defense).

[6] The Defendants' Amended Answers and Counterclaims also purport to assert counterclaims for negligent misrepresentation, constructive fraud, fraud and misrepresentation, breach of contract, breach of contract accompanied by fraudulent act, interference with contractual relationship, conversion, and violation of the South Carolina Unfair Trade Practices Act.

properties and accounts receivable. In the June 2008, Wicker signed mortgages encumbering two parcels of real estate owned by Ultra Holdings for cross collateralization with ESI's line of credit. Additionally, in July 2008, BankMeridian and ESI entered into an Addendum to previous loan documents. The Addendum permitted BankMeridian to apply 75% of ESI's accounts receivable to certain obligations. The other 25% of ESI's accounts receivable was available for ESI's operating expenses. Defendants allege that they were induced into executing the cross collateralization and Addendum, and that BankMeridian's conduct before and after these agreements were signed was improper and resulted in damages to the Defendants.

Defendants allegedly defaulted on the obligations to BankMeridian and it initiated a lawsuit in state court for recovery. Thereafter, ESI filed a voluntary petition for Chapter 11 relief on May 29, 2009[7], and portions of the state court action were removed to this Court, initiating this adversary proceeding.[8]

This case has been slowed and complicated by a number of unusual factors, including the filing of a Chapter 7 bankruptcy case in this Court by Defendant Bailey after this adversary was well underway. Thereafter, the matter was scheduled for trial; however, Plaintiff BankMeridian—the sole named Plaintiff at that time—was closed on July 29, 2011, by the Office of the Comptroller of the Currency and the Federal Deposit Insurance Corporation (the "FDIC") was appointed as receiver.[9]

In relation to the failure of BankMeridian, SCBT acquired certain assets—including but not limited to the loan documents at issue in this matter—from the FDIC pursuant to the terms and

---

[7] C/A No. 09-03768-hb.
[8] *See* Doc. No. 13, entered Oct. 29, 2009.
[9] *See* Affidavit of Shane W. Rogers dated October 20, 2011, attached as Exhibit "A" to SCBT, N.A.'s Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment.

3

conditions set forth in a purchase and assumption agreement.[10]  SCBT was thereafter granted permission from the FDIC to assert certain special powers in defense to Defendants' counterclaims and in response to their defenses.[11]  By Order entered Oct. 25, 2011, SCBT, N.A., as successor in interest to BankMeridian, was added as an additional Plaintiff.[12]

## II. DISCUSSION

The Defendants, in their Amended Answers and Counterclaims, as well as the Response to SCBT's Motion for Summary Judgment, have taken the position that SCBT stands in the shoes of BankMeridian for the purposes of the defenses and counterclaims originally asserted by the Defendants against BankMeridian.  SCBT disagrees and asserts that it is entitled to summary judgment in its favor on all causes of action, defenses, and counterclaims.

### A. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[13]  "[S]ummary judgment should be granted in those cases in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." *Hyman v. Ford Motor Co.*, 142 F. Supp. 2d 735, 738 (D.S.C. 2001).  "In deciding a summary judgment motion, the court must look beyond the pleadings and determine whether there is a genuine need for trial." *Wilson Group, Inc. v. Quorum Health Res., Inc.*, 880 F. Supp. 416, 420 (D.S.C. 1995) (citing *Matsushita Electric Indus. Co. Ltd.*

---

[10] A copy of the Memorandum of Purchase was attached as Exhibit "B" to SCBT's Motion for Summary Judgment and is part of the record in this matter. The assignment of the loan documents at issue is evidenced by a Memorandum of Purchase and Assumption Agreement and Assignment dated August 26, 2011, and recorded October 21, 2011, in Mortgage Book 4509, Page 668 in the Spartanburg County Register of Deeds.

[11] SCBT's Reply to the Counterclaims of Defendants Earth Structures, Inc. and Steven R. Wicker (Doc. No. 98).

[12] *See* Doc. No. 96.

[13] Made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.

*v. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  If the moving party carries its burden of showing there is an absence of evidence to support a claim, then the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories or admissions on file that there is a genuine issue of material fact for trial. *Id.* (citation omitted).

An issue of fact is "genuine" if the evidence is such that a reasonable finder of fact could return a verdict for the non-moving party. *Id.*  "An issue of fact concerns 'material' facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law." *Id.*  "A complete failure of proof concerning an essential element of a cause of action necessarily renders all other facts immaterial." *Id.*  Further, the presentation of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment.  *Id.*

One of the purposes of summary judgment is to determine whether the parties can provide evidentiary support for their version of the facts, and if a party has credible evidence for its position, it must make the existence of such evidence known, because summary judgment cannot be defeated by the vague hope that something may turn up at trial.  *E. P. Hinkel & Co., Inc. v. Manhattan Co.*, 506 F.2d 201 (D.C. Cir. 1974).  Summary judgment is intended to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense.  *See Morgan v. Havir Mfg. Co.*, 887 F. Supp. 759 (E.D. Pa. 1994).

### B.  COUNTERCLAIMS

Defendants assert various counterclaims[14] that all arise from alleged acts and/or omissions of BankMeridian employees.  Specifically, Defendant Wicker's deposition testimony indicates that Defendants' Counterclaims are based on alleged oral representations made by BankMeridian

---

[14] *See supra* note 6.

5

employees in June of 2008.[15]

SCBT is a separate and distinct entity from the former entity that operated as BankMeridian, N.A.[16] Defendants have failed to present any evidence, by way of affidavit or otherwise, that would suggest any act or omission on the part of SCBT that would give rise to the Defendants' counterclaims. After a review of the pleadings filed herein, examination of the relevant facts, and consideration of the arguments presented, the Court finds that SCBT is entitled to summary judgment on each of the counterclaims raised in the Defendants' Amended Answers and Counterclaims.[17] Defendants' attempt to hold SCBT responsible for alleged acts or omissions of BankMeridian employees has not been supported by portions of the record or applicable legal authorities.

Further, in the Order entered in this matter on October 25, 2011, (Doc. No. 96), the Court noted that this adversary cannot continue at this time against BankMeridian. "The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ('FIRREA') provides an administrative process for claims against the assets of failed banks held by the FDIC as receiver." *Id.* Section 1821(d) of FIRREA, "sets forth a detailed series of rules under which all claims involving an insolvent institution are received and handled." *Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998, 1003 (4th Cir. 1994) (citing 12 U.S.C. § 1821(d)). Accordingly, the administrative claims process affords the Defendants a means by which to assert their claims against BankMeridian's assets. Whether or not the Defendants choose to participate in that claims

---

[15] *See* Transcript from Deposition of Steven Randall Wicker, May 21, 2010 ("Wicker Trans.") Page 84, Lines 11 – 21 and Page 104, Lines 13 – 24. The relevant pages from the Wicker Trans. were attached to SCBT's Motion for Summary Judgment and are part of the record in this matter.

[16] *See* Affidavit of Will Aiken dated November 21, 2011, a copy of which was attached to SCBT's Motion for Summary Judgment and is part of the record in this matter.

[17] Having concluded that SCBT is entitled to summary judgment as to the Defendants' counterclaims, the Court need not rule on the applicability of 12 U.S.C. §1825(b), because whether or not the Defendants can recover damages in the nature of penalties or fines against SCBT is now moot.

process is left to them; however, the Defendants cannot proceed in this matter against BankMeridian until the administrative claims process is exhausted. *Id.* at 1006 (interpreting 12 U.S.C. § 1821(d)(13)(D) as a jurisdictional bar until the administrative process is exhausted and holding that litigants who have a case pending against a financial institution when it is subsequently placed in receivership must exhaust FIRREA's administrative claims process in order to continue their action in federal court).[18]

### C. DEFENSES

The Court now turns to the defenses raised in the Defendants' Amended Answers to SCBT's causes of action.[19] The failure of original Plaintiff BankMeridian on July 29, 2011, and the appointment of the FDIC as receiver caused a fundamental change in this lawsuit. "The world changes when a bank goes into receivership." *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 134 (3d Cir. 1991). Along with these changes is the implementation of the *D'Oench* doctrine, which was established by the Supreme Court in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S. Ct. 676 (1942). The doctrine "prohibits claims based upon agreements which are not properly reflected in the official books or records of a failed bank or thrift." *Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 333 n.3 (4th Cir. 2000) (citing *Resolution Trust Corp. v. Allen*, 16 F.3d 568, 574 (4th

---

[18] Even if the Defendants could establish that the counterclaims for negligent misrepresentation, fraud and misrepresentation, constructive fraud, breach of contract, and breach of contract accompanied by a fraudulent act were somehow applicable to SCBT, the same are barred by 12 U.S.C. § 1823(e) because the counterclaims for negligent misrepresentation, fraud and misrepresentation, and constructive fraud all require proof of a false representation. These counterclaims, by their very nature are based on oral representations and are thus barred by § 1823(e). *See infra* at 7-10.

Similarly, Wicker's deposition testimony indicates that the counterclaims for breach of contract and breach of contract accompanied by a fraudulent act are based on alleged oral agreements or modification to the written loan documents. Wicker specifically testified that the Defendants' Counterclaim for breach of contract and breach of contract accompanied by fraudulent act were based on oral agreements. *See* Wicker Trans. Page 111, Line 5 – 19 and Page 113, Line 4 – 10. An oral agreement such as the one asserted by the Defendants in this matter is exactly the type of undocumented agreement and/or scheme that §1823(e) was codified to protect against. As such, the counterclaims for breach of contract and breach of contract accompanied by a fraudulent act are barred by § 1823(e). *See infra* at 7-10.

[19] *See supra* note 5.

Cir. 1994)). The doctrine was later codified by 12 U.S.C. § 1823(e) which provides:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (A) is in writing,
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1822(e)(1) (2011). Stated another way, this section protects SCBT, as the FDIC's assignee, from claims based on oral or improperly documented "side agreements" and "schemes or arrangements" that would diminish the value of an asset acquired by the FDIC.

### *1. FRAUD IN THE INDUCEMENT*

It is undisputed that the loan documents at issue in this case were acquired by the FDIC as a result of BankMeridian's failure and the same were ultimately assigned to SCBT.[20] Here, Defendants rely on agreements and/or representations that are not reflected in the official records of BankMeridian nor are they found within the four corners of the loan documents to support their defenses. In *D'Oench Duhme*, the Supreme Court held that when the maker of a note lends himself to a scheme or arrangement whereby the banking authority is likely to be misled, that scheme or arrangement cannot form the basis for a defense against the FDIC. 315 U.S. at 461.

*D'Oench* and its progeny are informative as to the public policy and purpose behind § 1823(e). *See generally Young v. FDIC*, 103 F.3d 1180, 1188 (4th Cir. 1997) (rejecting the

---

[20] *See* Memorandum of Purchase.

"innocent borrower exception" because it "runs contrary to the doctrine's broad purpose of preventing private parties from enforcing claims against the FDIC based upon agreements not found in the bank's records."). In the instant case, Wicker's deposition testimony indicates that the Defendants' defense of fraud in the inducement is based on alleged oral representations made by BankMeridian employees in June of 2008.[21] The oral representations and/or oral agreement relied upon by Defendants in asserting their defenses and counterclaims simply do not meet the requirements of § 1823(e) because, as Wicker testified, the alleged representations did not become a part of the loan documents that were ultimately executed by ESI and Wicker in this matter.[22] Therefore, SCBT is entitled to judgment as a matter of law with regard to the defense of fraud in the inducement. *See Langley v. FDIC*, 484 U.S. 86, 108 S. Ct. 396 (1987) (stating that even if a bank fraudulently induced a borrower into signing a loan document, § 1823(e) bars the borrower from relying on the bank's representation).

Even if the defense of fraud in the inducement was not barred by § 1823(e), the Court could find from the record that the Defendants failed to identify material facts to support this defense. To establish a claim or defense of fraud in the inducement, the Defendants must prove the nine elements of fraud as well as the following three elements: "(1) that the alleged fraudfeasor made a false **representation** relating to a present or preexisting fact; (2) that the alleged fraudfeasor intended to deceive him; and (3) that he had a right to rely on the representation made to him." *Darby v. Waterboggan of Myrtle Beach, Inc.*, 288 S.C. 579, 584, 344 S.E.2d 153, 155 (Ct. App. 1986) (emphasis added). To sustain a claim for fraud, the following elements must be

---

[21] *See* Wicker Trans. Page 84, Lines 11 – 21 and Page 104, Lines 13 – 24. The relevant pages from the Wicker Trans. were attached to SCBT's Motion for Summary Judgment and thus are part of the record on this matter.

[22] *See id.* at 59, Lines 13 – 16; Page 66, Lines 10 – 12. "[T]he general and well recognized rule, a written agreement between two persons merges all prior talk and negotiations about the subject of the agreement, and it is not proper to receive testimony to vary or contradict the terms of such agreement. . . ." *Gantt v. Van der Hoek*, 251 S.C. 307, 317, 162 S.E.2d 267, 272 (1968).

demonstrated:

> by clear, cogent, and convincing evidence: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Schnellmann v. Roettger*, 373 S.C. 379, 382, 645 S.E.2d 239, 241 (2007).

In his deposition, Wicker testified that "[t]he June 2008, documents concerning Ultra Group, Earth Structures, the line of credit, personal guaranties" and the Addendum were the result of fraud in the inducement.[23] The following is an excerpt from Wicker's deposition wherein Wicker describes the alleged false statement upon which all of ESI and Wicker's fraud claims are based:

> Q. And tell me exactly what it was that was false that they told you.
>
> A. That they were there to help me. That they were there to see that I had the working capital that I needed. They were there to see that I still had access to the line of credit. They were there to help collect receivables. That they were going to start contacting some of – there were some older receivables that were like more than 60 or 90 days. They were going to start contacting and see if they couldn't help us collect on some of those.[24]

Assuming, for the purpose of the Summary Judgment standard, that the alleged representations were made, the representations were not related to a present or preexisting fact. "[T]o be actionable, the representation must relate to a present or pre-existing fact and be false when made. 'The representation cannot ordinarily be based on unfulfilled promises or statements as to future events.'" *Koontz v. Thomas*, 333 S.C. 702, 713, 511 S.E.2d 407, 413 (Ct. App. 1999) (citation omitted) (discussing the sufficiency of a claim for negligent misrepresentation). Therefore, SCBT's Motion for Summary Judgment shall be granted with respect to this defense.

---

[23] *See* Wicker Trans. Page 79, Lines 1 – 25.
[24] *See id.* at 84, Lines 11 – 21.

## 2. DURESS

Section 1823(e) also bars the Defendants from raising duress as a defense because it is irrelevant to the applicability of the *D'Oench* doctrine whether the borrower was "coerced" under "economic duress" into accepting the agreement. *Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway*, 894 F.2d 750, 754 (5th Cir. 1990); *see also FDIC v. Gettysburg, Corp.*, 760 F.Supp. 115, 117 (S.D.Tex.1990) (finding that "[t]he claim of economic duress is also barred") (*citing Langley*, 484 U.S. 86). Accordingly, the Defendants' duress defense is precluded by § 1823(e).

Even if the Defendants' duress claim was not barred by § 1823(e), neither ESI nor Wicker can establish that the loan documents were executed under duress. "Under South Carolina law, duress has been defined as coercion that puts a person in such fear that he is 'bereft' of the quality of mind essential to the making of a contract and the contract was thereby obtained as a result of this state of mind." *Hyman v. Ford Motor Co.*, 142 F. Supp. 2d 735, 744 (D.S.C. 2001) (citing *In re Nightingale's Estate*, 182 S.C. 527, 189 S.E. 890, 897 (1937)); *Phillips v. Baker*, 284 S.C. 134, 325 S.E.2d 533 (1985); *Cherry v. Shelby Mut. Plate Glass & Cas. Co.*, 191 S.C. 177, 4 S.E.2d 123 (1939) (duress is defined as "a condition of the mind produced by improper external pressure of influence that practically destroys the free agency of a party and causes him to do an act or form a contract not of his own volition"). "It is established beyond peradventure that duress will not be implied from the making of a hard bargain or from a showing of a hard bargain or from the showing that a [contract] was given under the press of adverse business." *Id.* at 745-46 (citation omitted). Here, there is no evidence that BankMeridian put any pressure on ESI or Wicker to execute the loan documents.[25] The alleged pressure that Wicker asserts he faced involved issues

---

[25] Based on Wicker's deposition testimony, the defense of duress is only related to the June 2008 documents. *See* Wicker Trans. Page 92, Lines 5 – 16. In addition, subparagraph 9 of Section b. of the Joint Pre-Trial Order reads as

11

unrelated to BankMeridian. For instance, Wicker indicated that he was under pressure because "[he] had bills due."[26] Accordingly SCBT's Motion for Summary Judgment is granted with regard to this defense.

### 3. UNCLEAN HANDS, ESTOPPEL AND UNJUST ENRICHMENT

"The doctrine of unclean hands precludes a plaintiff from recovering in equity if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant." *First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 568, 511 S.E.2d 372, 379 (Ct. App. 1998) (citation omitted).

> The elements to recover for unjust enrichment based on quantum meruit, quasi-contract, or implied by law contract, which are equivalent terms for equitable relief, are: "(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value."

*Regions Bank v. Wingard Prop., Inc.*, 394 S.C. 241, 257, 715 S.E.2d 348, 356 (Ct. App. 2011) (quoting *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach,* 341 S.C. 1, 8–9, 532 S.E.2d 868, 872 (2000)). Furthermore, to establish equitable estoppel, the Defendants must establish: "(1) ignorance of the party invoking it of the truth as to the facts in question; (2) representations or conduct of the party estopped which mislead; (3) reliance upon such representations or conduct; and (4) prejudicial change of position as the result of such reliance." *Crescent Co. of Spartanburg, Inc. v. Ins. Co. of N. Am.*, 266 S.C. 598, 225 S.E.2d 656 (1976) (citation omitted). In the same defense, the Defendants assert that the Plaintiffs should not be permitted to pursue or recover on their claims due to the Plaintiffs' alleged unlawful conduct.

---

follows: Mr. Wicker alleges that he signed the June 2008, loan documents under duress. In support of this allegation, Mr. Wicker intends to present testimony and evidence of the interaction between the parties leading up to the execution of the loan documents from June 2008 and the pressure he was under at the time.

[26] *See* Wicker Trans. Page 92, Line 19.

12

As set forth in greater detail above, there is no evidence of any wrongdoing on the part of SCBT with regard to the loan documents at issue because the facts surrounding those documents involve BankMeridian. As such, the underpinnings for each of the equitable defenses asserted by the Defendants are not present on these facts to support such defenses with respect to SCBT. Based on the foregoing, SCBT is entitled to summary judgment as to the Defendants' equitable defenses.

### D. SCBT'S CAUSES OF ACTION

Having concluded that SCBT is entitled to summary judgment with regard to the Defendants' defenses and counterclaims, the Court must now determine if there is a genuine need for trial on the causes of action asserted by SCBT. The causes of action raised in the Complaint that are still before the Court are as follows:

a. Second Cause of Action (Breach of Note 2);
b. Third Cause of Action (Foreclosure of Mortgage 1 Encumbering Real Property);
c. Tenth Cause of Action (Breach of Note 4);
d. Eleventh Cause of Action (Breach of Security Agreement 1 and Security Agreement 2 and Collection of Accounts);
e. Twelfth Cause of Action (Foreclosure of Mortgage 3 Encumbering Real Property);
f. Thirteenth Cause of Action (Foreclosure of Mortgage 4 Encumbering Real Property);
g. Sixteenth Cause of Action (Collection of Rents);
h. Seventeenth Cause of Action (Injunction-Accounts Receivables);
i. Eighteenth Cause of Action (Injunction - Rents) and
j. Nineteenth Cause of Action (Accounting).

These causes of action were initially pleaded in state court well before ESI's bankruptcy case was filed and involve matters more appropriately addressed during a foreclosure process. However, the automatic stay of 11 U.S.C. § 362 and removal of the lawsuit to this Court intervened, and thereafter in ESI's bankruptcy case, this Court approved a Chapter 11 plan of reorganization that addressed the claims of BankMeridian and referenced the potential outcome of

this lawsuit.[27]

At summary judgment, the parties did not sufficiently address the conflicts between the confirmed plan's terms[28] (which allow repayment of any debt through installments payments) and SCBT's and BankMeridian's remaining claims in this lawsuit. Additionally, the parties did not adequately address the effect, if any, of the substitution of SCBT for BankMeridian on the plan's repayment terms. Therefore, although the Court has effectively determined herein that the defenses and counterclaims do not bar SCBT's pursuit of its causes of action, the next step in the resolution of this matter is less clear and requires further proceedings.

**IT IS THEREFORE ORDERED:**

1. That SCBT is granted summary judgment in its favor with regard to the defenses and counterclaims raised by the Defendants in their Amended Answers and Counterclaims;

2. That a hearing will be held before the undersigned on **Tuesday, March 27, 2012, at 10:00 a.m.** in Spartanburg to consider the appropriate disposition of any causes of action remaining after entry of this Order, including SCBT's request to remand the remainder of this matter to state court; and

3. That any memoranda in support of a party's position must be filed seven (7) business days before the hearing.

**IT IS SO ORDERED.**

---

[27] Doc. No. 221, C/A No. 09-03768-hb, entered May 20, 2010
[28] Doc. Nos. 150, 184, 215, 221, C/A No. 09-03768-hb.