**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **09-03768-hb**
Adversary Proceeding Number:  **09-80118-hb**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT STEVE R. WICKER'S MOTION, VACATING SUMMARY JUDGMENT ORDER AS TO STEVEN R. WICKER AND REMANDING REMAINING CAUSES OF ACTION, DEFENSES AND COUNTERCLAIMS**

The relief set forth on the following pages, for a total of 31 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/29/2013**



US Bankruptcy Judge
District of South Carolina

Entered: 03/29/2013

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In re,

Earth Structures, Inc.,

                        Debtor(s).

Bank Meridian, N. A.
SCBT, N. A., as successor in interest to Bank
Meridian,

                        Plaintiff(s),

v.

Ultra Holdings, LLC
Earth Structures, Inc.
Steven R. Wicker
Timothy Bailey
FIRST CITIZENS BANK
The United States of America by and through
its Agency the Department of the Treasury,
Internal Revenue Service,

                        Defendant(s).

C/A No. 09-03768-HB

Adv. Pro. No. 09-80118-HB

Chapter 11

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT
STEVEN R. WICKER'S MOTION,
VACATING SUMMARY JUDGMENT
ORDER AS TO STEVEN R. WICKER
ONLY AND REMANDING
REMAINING CAUSES OF ACTION,
DEFENSES AND COUNTERCLAIMS**

      On appeal, the U.S. District Court for the District of South Carolina granted appellant

Steven R. Wicker's Motion to Remand and denied appellee SCBT, N.A.'s ("SCBT") Motion to

Dismiss the appeal.[1] On remand this Court must determine if any relief should be granted as a

result of Wicker's request for reconsideration.[2] For the reasons discussed below, Wicker's

request is granted in part and denied in part. As a result, the Court's Summary Judgment Order

and corresponding Judgment entered February 29, 2012 ("February 29, 2012 Summary

---

[1] *See* Doc. No. 163, filed January 14, 2013. The last two defendants listed in the caption have not actively
participated in this proceeding in this Court.

[2] Doc. No. 162, filed August 27, 2012 (Motion to Reconsider All Rulings/Judgments Upon Remand from the
Appellate Court in Light of New Evidence).

Judgment Order")[3] are vacated as to Wicker only, individually, and all remaining matters in this

lawsuit are remanded to the state court for conclusion.

## FACTS AND PROCEDURAL HISTORY

A recitation of the complicated factual and procedural history of this proceeding is amply

set forth in this Court's pre-appeal records.[4]  However, the matter before the Court presents an

unusual set of circumstances that warrant a restatement of many of the pre and post-appeal

events in sufficient detail.

### The Chapter 11 Bankruptcy Case of Earth Structures, Inc.

Earth Structures, Inc., ("ESI") filed a Chapter 11 petition for relief in this court on May 19,

2009.[5]  The petition indicates that ESI is a corporation.  Wicker signed the voluntary petition on

behalf of ESI as its president.  The bankruptcy schedules indicated that ESI borrowed money

from Bank Meridian, N.A. ("Bank Meridian"), that Wicker and Timothy Bailey were also

contractually obligated to repay debts owed by ESI (including debts to Bank Meridian), that

Wicker and Bailey each owned 50% of the stock of ESI, and that there was litigation pending

between Wicker and Bailey as well as pending litigation involving Bank Meridian.[6]

The Chapter 11 Plan was confirmed a year later on May 20, 2010.[7]  The confirmed plan

provides repayment or other treatment for twenty-nine classes of creditors and interest holders,

including the following for Bank Meridian:

> *Class Number 6: This class consists of the secured claim of Bank Meridian which has a
> lien on the accounts receivable and cash collateral of the Debtor [ESI] along with real
> property not belonging to the Debtor but to another entity, Ultra Holdings. Creditor filed
> a claim on October 7, 2009 in the amount of $471,411.91, but there is litigation pending*

---

[3] Doc. Nos. 119 and 120, signed February 28, and entered February 29, 2012.
[4] *See* Doc. Nos. 43, 119, and 135.
[5] C/A No. 09-03768-hb, Doc. No. 1.
[6] *Id.* at Doc. Nos. 16, 17, 135, 150, 184  and 215 (Chapter 11 Plan and Disclosure Statement and amendments); *see also*, Adv. Proc. Nos. 09-80126 and 09-80127.
[7] C/A No. 09-03768-hb, Doc. Nos. 221, 150, 184 and 215.

*in this Court that may affect that amount. The Debtor will pay the Creditor $2,260 monthly as provided in the cash collateral order to be applied toward the debt obligation until the pending lawsuit is resolved. Bank Meridian will retain a lien on the accounts receivable and cash collateral. Once the balance due and owing under the Note has been determined by settlement of the parties or litigation, the Debtor will pay the debt over 10 years amortized over 25 years at prime interest and Bank Meridian will retain its first priority lien on the accounts receivable and cash collateral and on the remaining real estate owned by Ultra Holdings. Bank Meridian is hereby authorized to file any document necessary to continue perfection of its security interest. Upon payment of the court ordered obligation in full, creditor will satisfy its lien as to the Debtor and any codebtors. This class is secured, impaired.*[8]

The plan and 11 U.S.C. § 1141 bind the parties to this lawsuit and add new contractual terms to any pre-existing relationships. Wicker signed the plan documents as president of ESI and counsel for ESI signed as well.  The filings  provided that Bailey was not participating in the business at the time the plan was filed and confirmed, but disclosed that Bailey still owned 50% of the stock. Per the plan terms, upon confirmation Bailey forfeited his ownership rights in ESI but ESI continued as a reorganized, corporate debtor and new stock would be issued. Through the plan Debtor ESI retained the right to continue to prosecute and defend any causes of action and provided this Court shall retain jurisdiction to, among other things, "[d]ecide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters[.]"[9]

A Final Order Closing Case was entered on October 1, 2010 as the bankruptcy case of ESI had been fully administered and debt repayment terms had been established.[10]

### The Litigation Remaining After the Bankruptcy Case Was Closed

When the Final Order Closing Case was entered, various disputes related to ESI's bankruptcy and outlined in adversary proceedings remained for resolution.  That Order provided that "the court's jurisdiction is ended except as provided in 11 U.S.C. § 1142 and the confirmed plan" including continued jurisdiction over ESI's pending adversary actions.

---

[8] C/A No. 09-03768-hb, Doc. No. 215.
[9] *Id.* at Doc. No. 150.
[10] *Id.* at Doc. No. 261.

As of December 2011, all adversary proceedings pending when the case was closed, other than the above captioned lawsuit, were concluded.[11]

This lawsuit began when Bank Meridian filed a complaint in state court in 2009, shortly before the bankruptcy case was filed.[12]  It was a state law action to collect debts and/or recover collateral from Defendants Ultra Holdings, LLC ("Ultra"), ESI, Wicker and/or Bailey. The lawsuit's relationship with federal courts began when Debtor/Defendant ESI, through counsel, removed it from state court.[13] Thereafter, ESI's counsel in the Chapter 11 case also represented ESI in this lawsuit in this Court.[14]  A significant portion of the lawsuit was separated and quickly returned to state court for various reasons including: the involvement of multiple parties of which ESI was the only party that had filed bankruptcy at that time;[15] a number of issues raised in the lawsuit were not subject to the automatic stay of 11 U.S.C. § 362 and therefore could proceed in state court; properties involved in the recovery action were not owned by ESI; and the remanded portions of the lawsuit did not directly affect the administration of the bankruptcy estate of ESI.[16] Thereafter, the portion of this proceeding that remained in state court moved forward unencumbered by the bankruptcy. Those state court proceedings also involved Bank Meridian, Ultra, Bailey and Wicker.

This Court did not remand the following causes of action stated in the original complaint: (1) Breach of Note 2 (seeks judgment against Ultra as a result of a promissory note executed by Ultra); (2) Foreclosure of Mortgage 1 Encumbering Real Property (seeks to recover on a mortgage executed by Ultra to secure Note 2, and judgment against Ultra and guarantors Bailey

---

[11] *See generally* C/A No. 09-03768-hb Docket.

[12] C/A No. 2009-CP-42-0793, Spartanburg County Court of Common Pleas for South Carolina, filed February 9, 2009.

[13] C/A No. 09-03768-hb, Doc. No. 54, Notice of Removal, filed August 4, 2009, by Earth Structures, Inc.

[14] C/A No. 09-03768-hb.

[15] Bailey filed a Chapter 7 bankruptcy petition on May 14, 2010, C/A No. 10-03470-hb.

[16] Doc. No. 13, Order Granting Motion for Remand, filed October 29, 2009.

and Wicker for any deficiency); (3) Breach of Note 4 (seeks judgment against ESI as a result of a promissory note executed by ESI); (4) Breach of Security Agreement 1 and Security Agreement 2 and Collection of Accounts (seeks to collect the accounts of ESI as a result of ESI's granting of a security interest in accounts to secure Note 4); (5) Foreclosure of Mortgage 3 Encumbering Real Property (seeks to recover on a mortgage executed by Ultra to secure Note 4 given by Ultra, also includes cross-collateralization provision and seeks deficiency against ESI and guarantors Bailey and Wicker); (6) Foreclosure of Mortgage 4 Encumbering Real Property (seeks to recover on a mortgage executed by Ultra  to secure Note 4, also includes cross-collateralization provision and seeks deficiency against ESI, and guarantors Bailey and Wicker); (7) Collection of Rents (seeks declaratory judgment against Ultra and deficiency against ESI, Bailey and Wicker); (8) Injunction – Accounts Receivables (seeks ESI's accounts); (9) Injunction – Rents (seeks rents of mortgaged properties not owned by ESI); and (10) Accounting (demands that ESI account for funds).[17]

ESI and Wicker had filed an Answer and Counterclaim challenging enforcement of the documents in question and seeking to recover from Bank Meridian for negligent misrepresentation, constructive fraud, fraud and misrepresentation, breach of contract, breach of contract accompanied by a fraudulent act, interference with contractual relationship, conversion, breach of fiduciary duty and unfair trade practices under South Carolina law.

After a lengthy discovery period and near the time ESI's Chapter 11 bankruptcy case was closed, Bank Meridian filed the first Motion for Summary Judgment regarding the removed causes of action, defenses and counterclaims. Some minor issues raised in the pleadings were

---

[17] *Id.* The original pleadings indicate that "Note 2" is a promissory note from Ultra to Bank Meridian for $202,000. "Note 4" is a promissory note from ESI to Bank Meridian for $650,000.

concluded as a result[18] and the causes of action remaining here proceeded toward trial. In the proposed Joint Pre-Trial Order presented to the court and signed by Wicker, *pro se*, as well as counsel for Bank Meridian, counsel for ESI, and counsel for Ultra and Bailey, the parties indicated that they were prepared for trial. The proposed order also included a listing of undisputed facts about the loans in question.[19]   After various scheduling issues, the portion of the lawsuit that remained in this court was scheduled for an August 29, 2011 trial. At that trial the Court was to determine the remaining issues, including whether ESI and Wicker were due any amount as a result of their counterclaims against Bank Meridian and whether any defenses asserted relieved ESI or Wicker from any liability for the obligations.

### The Failure of Bank Meridian and the Addition of SCBT to the Lawsuit

On July 29, 2011, the Office of the Comptroller of the Currency closed Bank Meridian and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver. Bank Meridian's counsel promptly reported this fact and the August trial was postponed.  SCBT contracted to purchase certain assets owned by Bank Meridian from the FDIC, including the documents and resulting rights relevant to this lawsuit.  Bank Meridian's counsel filed a document titled "Motion for Continuance to Allow Adequate Time for Determination on Assignment of Special Powers, a Notice of Motion to Substitute Plaintiff and a Motion for Leave to File a Supplemental Reply to the Counterclaims of Defendants Earth Structures, Inc. and Steven R. Wicker."[20]  In the motions, counsel advised the Court that:

> *Plaintiff has submitted a specific request to the . . . FDIC for permission to assert certain "special powers" in response to the counterclaims and defenses asserted in this matter*

---

[18] Doc. No. 43, Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, filed October 26, 2010. The order granted judgment against Defendants on the appraisal statute defense and the over collateralization defense, granted judgment against Wicker on the interference with contractual relationship claim and  against Defendants on the breach of fiduciary duty claim.
[19] Doc. No. 66, filed May 23, 2011.
[20] Doc. Nos. 86, 91 and 92.

> *by . . . ESI and . . . Wicker. . . . The special powers have been enacted and interpreted to protect the FDIC and its assignees from various types of defenses and claims of borrowers or guarantors. Based on the Plaintiff's belief that the special powers are designed to protect the FDIC, as Receiver, and its assignees from the defenses and counterclaim asserted by the Defendants, the Plaintiff has requested permission to assert the special powers in this matter.[21]*

The motions represented to the Court that time was needed "to allow the FDIC to finalize its analysis as to the assignment of the applicable special powers[.]"[22] The motions also asked that SCBT, as purchaser of the documents and rights asserted by Bank Meridian in this lawsuit, be substituted as Plaintiff, and that SCBT be allowed to amend the pleadings to assert the "special powers" in response to ESI and Wicker's defenses and as a bar to the counterclaims.

The pleadings referenced the Financial Institutions Reform, Recovery and Enforcement Act of 1989 "(FIRREA"), allegedly applicable after the failure of Bank Meridian. As a result of the Motions and after a contested hearing, the Court entered an Order allowing SCBT, as successor in interest to Bank Meridian, to join the lawsuit, adding SCBT as an *additional* party ("October 25, 2011 Order").[23]  This Court found that Wicker and ESI

> *[C]annot proceed against Bank Meridian in this or any other court until they have exhausted their administrative remedies [under the FIRREA claims process]. Therefore, while the Court will not remove Bank Meridian as a named party in this suit, all proceedings against that party are suspended indefinitely....Applicable law precludes Wicker and ...[ESI] from asserting their counterclaims against Bank Meridian in this proceeding at this time.[24]*

No party filed a timely challenge to this ruling. The October 25, 2011 Order recognized that "[t]he remaining parties as of [October 2011] were BankMeridian, Ultra Holdings, LLC, Earth Structures, Inc., Steven R. Wicker and Timothy Bailey. Kenneth C. Anthony, Jr. [attorney for Ultra and Bailey], made an appearance [at the hearing] on behalf of Ultra Holdings, LLC and

---

[21] Doc. No. 86, filed October 14, 2011.
[22] *Id.*
[23] Doc. No. 96, filed October 25, 2011.
[24] *Id.*

Timothy Bailey, and reported that those parties do not plan to participate in the trial of this matter" going forward.[25]

### Amendment of the Pleadings in the Remaining Lawsuit

Thereafter SCBT amended the pleadings to join in the proceeding and to assert the "special powers."  The October 25, 2011 Order also allowed Wicker and ESI to amend their pleadings as they requested.  ESI's counsel filed amended pleadings and signed the documents for ESI.[26] Wicker filed amended pleadings *pro se* asserting his individual claims and defenses.[27] ESI and Wicker's amended pleadings were substantially similar.  The amendments added defenses of unclean hands, estoppel and unjust enrichment, fraud in the inducement and duress. Counsel that had represented Bank Meridian continued to represent SCBT and active participation in this case by Bank Meridian, Ultra and Bailey ceased.

SCBT clearly stated as early as October 14, 2011[28], that it intended to swiftly  pursue summary judgment after the amendments to use the "special powers" to defeat ESI and Wicker's counterclaims and defenses and proceed to collect the debts in question free of those claims. Despite this change of course in the lawsuit, no party filed any request seeking additional discovery and the original discovery deadline had long since expired.

### SCBT's Summary Judgment Motion

SCBT filed a Motion for Summary Judgment on November 21, 2011.[29] That Motion stated that SCBT is the party entitled to enforce any obligations formerly held by Bank Meridian

---

[25] Doc. No. 96, entered October 25, 2011.  Ultra Holdings and Bailey's participation to this point in this adversary proceeding had been limited.

[26] Doc. No. 99, Amended Answer and Counterclaim of Earth Structures, Inc., filed November 10, 2011.

[27] Doc. No. 100, Amended Answer and Counterclaim of Steven R. Wicker, filed November 14, 2011.

[28] See Doc. No. 86, Motion to Continue Hearing, filed October 14, 2011.

[29] Doc. No. 103, Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment, filed November 21, 2011.

against ESI, Wicker and others, and that 12 U.S.C. § 1823(e)[30] bars recovery on any defenses
and counterclaims against SCBT.  SCBT further argued that no act of SCBT led to any damages
to ESI or Wicker because, as a separate and distinct entity from Bank Meridian, there is no
evidence that SCBT is liable for Bank Meridian's actions.[31]   SCBT sought judgment in its favor
in an attempt to recover its collateral and collect the sums due under the notes that originated
with Bank Meridian.

### Opposition to SCBT's Summary Judgment Motion

Defendant ESI filed a response through counsel.[32]   The response summarized the
remaining disputes:

> *The purpose of the trial in this case is to determine the amount, if any, owed by ESI to
> Bank Meridian or its successor. See Class Number Six of ESI's Approved Bankruptcy
> Plan Docket Numbers 135, 150 and 221. If successful at trial, the defenses and
> counterclaims asserted by ESI and Mr. Wicker against Bank Meridian and/or its
> successor SCBT, N.A., would serve to offset or obviate the liability, and could result in
> excess damages being awarded to ESI and/or Mr. Wicker.[33]*

The response did not request any relief to allow ESI to obtain further evidence about the details

of the assignment of the loans by the FDIC to SCBT, or to acquire any additional information

---

[30] Further reference to 11 U.S.C. §1823 will be by section number only.  12 U.S.C. § 1822(e)(1) (2011)
provides as follows:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset
> acquired by it under this section or section 1821 of this title, either as security for a loan or by
> purchase or as receiver of any insured depository institution, shall be valid against the Corporation
> unless such agreement—
>
> (A) is in writing,
> (B) was executed by the depository institution and any person claiming an adverse
>     interest thereunder, including the obligor, contemporaneously with the acquisition of
>     the asset by the depository institution,
> (C) was approved by the board of directors of the depository institution or its loan
>     committee, which approval shall be reflected in the minutes of said board or
>     committee, and has been, continuously, from the time of its execution, an official
>     record of the depository institution.

[31] Doc. No. 103, Motion for Summary Judgment, filed November 21, 2011.
[32] Responses were due by December 9, 2011. (Doc. No. 104).  ESI filed a timely response on that date. (Doc. No.
106).
[33] Doc. No. 106, filed December 9, 2011. ESI's Response to SCBT, N.A.'s Motion for Summary Judgment and
Memorandum in Opposition.

before decision on the matter. Wicker was not represented by counsel and did not file a timely written response to the Motion for Summary Judgment, but he did appear at the summary judgment hearing.

### Post Hearing Events and Entry of a Summary Judgment Order in Favor of SCBT

At the conclusion of the summary judgment hearing, and after the record was closed, the Court took the matter under advisement and invited competing proposed orders from the parties. Approximately forty-five days after the hearing, ESI's counsel filed a document titled "Supplemental Brief and Exhibits in Support of Debtor's Response to SCBT, N.A.'s Motion for Summary Judgment and Memorandum in Opposition" ("Brief").[34] That document, filed on January 31, 2012, included what ESI's counsel alleged was newly discovered evidence impacting the matter under advisement. ESI stated that the new information was received directly from the FDIC and that SCBT should have been aware of it, but had not produced the documents or evidence in question. The Brief stated that information attached indicated that "SCBT, N.A. has contracted with the FDIC to assume the liability of the instant litigation."[35] The Brief explained that this lawsuit appeared on an "Inherited Litigation Report" obtained from the FDIC and that the relevant agreements between SCBT and the FDIC provide that SCBT has "assumed the litigation liabilities of BankMeridian set forth in the Purchase and Assumption Agreement with the FDIC."[36] The applicable agreement provides for assumption of "all asset-related offensive litigation and all asset-related defensive litigation liabilities, but only to the extent such liabilities relate to assets subject to a Shared-Loss Agreement[.]"[37] Much of the "new evidence" consisted of print outs of emails that were vague in meaning and unauthenticated. ESI

---

[34] Doc. No. 112; *see also* Proposed Orders at Doc. Nos. 111 and 113, all filed January 31, 2012.
[35] Doc. No. 112, filed January 31, 2012.
[36] *Id.*
[37] Doc. No. 112, Exhibit A.

asserted that as a result of these documents a material factual dispute remained and summary judgment should be denied.

Wicker, individually, had not filed any response to the November 2011 Motion for Summary Judgment. Despite this fact on February 8, 2012, he filed a letter with the Court stating that he joined in ESI's post-hearing filings.[38]

SCBT filed a Motion to Strike the pleading and the "new evidence," asserting that the post-hearing submission, which included new alleged facts and legal arguments, was improper.[39] SCBT also asserted that the documents in question were unauthenticated and inadmissible.[40] The Court agreed—the documents were insufficient and untimely-- and shortly thereafter entered an Order Granting Motion to Strike ("Strike Order") on February 6, 2012.[41]

The February 29, 2012 Summary Judgment Order entered thereafter relied on the record before the Court found in the pre-hearing pleadings and the legal arguments made at the hearing.[42] It includes findings that "Defendants' attempt to hold SCBT responsible for alleged acts or omissions of Bank Meridian employees has not been supported by portions of the record or applicable legal authorities."[43] It found that "the [FIRREA] administrative claims process affords the Defendants a means by which to assert their claims against BankMeridian's assets"

---

[38]Doc. No. 117, filed February 8, 2012. When a Proposed Joint Pretrial Order was submitted for consideration (Doc. No. 66) in May of 2011, Wicker signed separately representing himself. On November 16, 2011, counsel for ESI filed a letter stating that ESI is the only party counsel represented in this adversary proceeding. Wicker was aware of the fact that counsel only represented ESI. These issues were discussed in various records of hearings held before the Court and he also filed numerous pleadings, discussed herein, which he filed on his own behalf without the assistance of counsel.
[39] Doc. No. 114, filed February 1, 2012.
[40] *Id.*
[41] Doc. No. 115, filed February 6, 2012.
[42] Doc. Nos. 119 and 120.
[43] *Id.*

and that § 1823(e) bars recovery.[44] The February 29, 2012 Summary Judgment Order covered

other matters as well, but the backbone of the decision was based on these findings.

### ESI's Post- Judgment Motions

Meanwhile, in response to the Strike Order, on February 29, 2012, ESI, through counsel,

filed a timely Motion and Memorandum in Support to Alter or Amend Pursuant to Rule 59(e)

F.R.C.P.[45] ESI's counsel argued that the documents ESI wished to add to the record by the filing

of its Brief proved that "there is a material question of fact as to whether SCBT, N.A., is

contractually obligated to be responsible for Bank Meridian's torts."[46] The pleading further

argued that SCBT had represented "to Defendants and to the Court that it has no contractual

liability for Bank Meridian's torts" and that the documents attached to the Brief prove otherwise.

At that point ESI still had not provided any admissible evidence of its allegations to support the

Motion. SCBT denied these allegations.[47]

On March 12, 2012, ESI's counsel filed a timely Motion requesting relief from the

February 29, 2012 Summary Judgment Order.[48] This is the last document filed by counsel on

behalf of ESI. SCBT responded.[49] A hearing was held on March 27, 2012, three months after the

summary judgment hearing. Even then, ESI did not properly authenticate the "new evidence,"

and even if authenticated there were no additional facts in the record to adequately explain the

evidence and its effect on SCBT's liability for any act of or litigation against Bank Meridian.

SCBT argued that no liability existed.[50] On April 19, 2012, the Court entered an Order Denying

Motion to Alter or Amend Judgment and Motion for Relief from Summary Judgment Order, and

---

[44] *Id.*
[45] Doc. No. 118, filed February 29, 2012.
[46] *Id.* at page 2.
[47] Doc. No. 127, Response to Motion, filed March 15, 2012 (including Affidavit of William M, Aiken, III,, Senior Vice President, Manager of Special Assets, SCBT, N.A.).
[48] Doc. No. 125, filed March 12, 2012; *see also* Doc. No. 135, filed April 19, 2012.
[49] Doc. No. 130, filed March 20, 2012.
[50] *See* Recording of hearing held March 27, 2012.

Remanding Remaining Causes of Action ("April 19, 2012 Order") [51] finding that ESI had not adequately supported its Motions and finding that the February 29, 2012 Summary Judgment Order should remain in effect. The Court found there had been no showing that the Strike Order was inappropriate, that the documents in question should be considered, or that they constitute previously unavailable or newly discovered evidence as those items are defined by applicable law. The Court found that "ESI was unable to reliably show the Court the purpose, meaning, completeness, or context of the documents even as late as the date of that hearing."[52]

## Remand of Remaining Matters to State Court

The April 19, 2012 Order also, after notice and a hearing, remanded the remainder of the lawsuit to state court pursuant to 28 U.S.C. § 1452(b).[53]  The Court found that the remaining disputes were primarily causes of action arising from state law that are within the expertise of the state court. The April 19, 2012 Order further directed that "[s]hould the state court determine that any amount addressed in ESI's confirmed plan of reorganization remains due, it shall be paid to the noteholder in accordance with the terms of the [confirmed Chapter 11] plan."[54]

The April 19, 2012 Order concluded all matters in this lawsuit requiring resolution in bankruptcy court. The confirmed plan terms governed repayment of ESI's debt that originated with Bank Meridian. The state court would be required to determine the exact amount of the debt in question to plug into that plan treatment, free of ESI's counterclaims and defenses to enforcement of the note.

---

[51]  Doc. No. 135, Order Denying Motion to Alter or Amend Judgment and Motion for Relief from Summary Judgment Order, and Remanding Remaining Causes of Action, filed April 19, 2012 (This Order details the documents that ESI wanted the Court to consider and their shortcomings and SCBT's response that it had no idea what these documents were or what they mean to this litigation).
[52]  Id.
[53]  Id. (internal citations omitted).
[54]  Id.

### Wicker's Post-Judgment Filings

Until this point in time, Wicker had failed to adequately, properly and timely challenge the November 2011 Motion for Summary Judgment.[55] Wicker also did not file any pleading joining in ESI's Motion to Reconsider or Motion to Strike to timely challenge the resulting February 29, 2012 Summary Judgment Order. On May 3, 2012, he filed a Notice of Motion Reconsider.[56] The document stated "Steven R Wicker and Earth Structures, Inc., the defendants have filed a Motion to Reconsider the Judgment entered in this adversary proceeding on the 19th day of April, 2012."  The document was signed "Steven R. Wicker, Pro Se."  It did not include any legal or factual grounds for reconsideration.  Although Wicker mentioned ESI in his pleading, ESI's counsel did not file any challenge to the April 19, 2012 Order. The Court entered an Order Denying Motion to Reconsider on May 7, 2012,[57] having already ruled on similar requests.  There has been no appeal from, or challenge to, that denial by any party.

Previously on May 3, 2012, Wicker did file a Notice of Appeal of prior decisions.[58]  That Notice stated that Wicker **and** ESI appeal "from [the] Motion for Summary Judgment, Remand, and Motion to alter or amend Judgment entered in this adversary proceeding on the 19th day of April, 2012."[59]  It was also signed by "Steven R. Wicker, Pro Se." Although ESI was represented by counsel at that time, counsel did not sign the document and did not initiate any appeal on behalf of ESI.

---

[55] Wicker's letter indicated that he joined in the filing of the Brief and ESI's Proposed Order, but noting was filed thereafter.

[56] Doc. No. 137, filed May 3, 2012.

[57] Doc. No. 140.

[58] Doc. No. 138, filed May 3, 2012. Fed. Rule of Bankr. Proc. 8002(a) provides that "the notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed[.]" The rule also provides that if certain post-order motions are filed, the appeal period runs from disposition of those motions.

[59] *Id.*

Wicker's reasons for the appeal, found in his May 18, 2012, Statement of Issues to be Presented on Appeal,[60] are worthy of inclusion here as they shed light on his disagreements with the Court's rulings. The document reads as follows:

> Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure the court may relieve a party from a final judgment, if:
> **newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)
> **fraud, misrepresentation, or misconduct by an opposing party
> Earth Structures nor Steven R. Wicker were allowed sufficient time to authenticate newly discovered evidence, which was received on February 27th, one day prior to the Motion for Summary Judgment Hearing. SCBT's own affidavit states that they were unable to obtain this document which should validate that it was previously unattainable.
> I am in the process of obtaining the authenticated documents, which I believe will show that SCBT was in possession of the "Inherited Litigation" document in question and was fully aware of their liability, but refused the courts [sic] demand to produce this evidence for nearly six months, thereby committing fraud, misrepresentation, and misconduct.
> I believe that in light of the new evidence and it's unavailability to the defense, that the ruling was in error as it was the court's responsibility to rule in a manner most favorable to the non moving party.
> I, Steven R Wicker, believe that I was denied Due Process as provided by the Fifth Amendment to the U.S. Constitution. I was neither addressed nor given the opportunity to be heard during the Motion for Summary Judgment hearing as the record will show.
> I, Steven R Wicker, feel that I have been misrepresented by my attorneys. The court gave ESI the opportunity several times during the Motion for Summary Judgment hearing to ask for more time to authenticate the newly discovered "Inherited Litigation" document. Each time I instructed my attorney to ask the Court for more time, and each time my attorney refused to do so.
> I specifically instructed my attorneys in writing to file an appeal on behalf of Earth Structures, Inc. and they failed to do so.[61]

ESI's counsel did not sign any of these documents on behalf of ESI and counsel had not been granted leave to withdraw at the time they were filed.

---

[60] Doc. No. 145. The Court notes Wicker states that information was received on February 27, 2012, the day before the summary judgment hearing. Actually the record reflects that the summary judgment hearing was held on December 15, 2011. The Summary Judgment Order was entered on February 29, 2012, after the matter was under advisement for some time. The Brief filed January 31, 2012, indicates that on or about January 12, 2012, the FDIC sent information to ESI's counsel, followed by more information on January 26, 2012. Wicker's Motion for Reconsideration does attach documents from the FDIC dated **March** 27, 2012 (not February 27), the day of the hearing on the Motion to Alter or Amend Judgment. These appear to be produced as the result of a subpoena issued by counsel for ESI on March 26, 2012. *See* Doc. Nos. 110, 118, 119, 120, 132, and 162.

[61] Doc. No. 145, filed May 18, 2012.

Wicker then filed a Motion for Stay Pending Appeal on May 18, 2012.[62] SCBT objected, stating, among other things, that Wicker had ample opportunity to authenticate and explain the documents in question and failed to do so.[63]  Counsel for ESI did not join in this filing. Instead, ESI's counsel filed a Motion to Withdraw as Attorney for ESI on May 29, 2012, because counsel and ESI "disagree on what is in the best interest for Earth Structures, Inc., in reaching a resolution of this case, which may differ from the interests of Mr. Wicker personally."[64]

### The SCBT Letter

A hearing was scheduled for June 4, 2012 to consider the stay request and ESI counsel's request to withdraw. A review of the pleadings the day before the hearing indicated insufficient grounds for a stay pending appeal given that the alleged "new evidence" remained vague and unauthenticated.

*However*, immediately before the hearing, **SCBT** electronically filed a letter (the "SCBT Letter") indicating that recently discovered new information may require modification of the Court's February 29, 2012 Summary Judgment Order.[65]  The SCBT Letter includes the following:

> I wanted to take a moment to bring to the Court's attention some new information that has been relayed to SCBT and its attorneys this morning. During the last few days, Joe Sargent, acting on behalf of Defendant Wicker, has contacted the FDIC with regard to this matter. It appears that Mr. Sargent was seeking information with regard to the "Inherited Litigation Report" that has been a point of discussion at several hearings. That interaction led the FDIC to take another look at this matter and to contact SCBT and its counsel in an effort to clarify a couple of issues.
> During a conference call that took place between 10:30 – 11:30 a.m. this morning, SCBT and its attorneys were informed by Stephen Pruss and Edward C. Parker, both of who are attorneys with the FDIC, that, since the transaction between the FDIC and SCBT was a loss share transaction, that it is the FDIC's position that SCBT assumed liability with regard to the Defendants' claims in this matter subject to the special powers.

---

[62] Doc. No. 143, filed May 18, 2012.
[63] Doc. No. 148, filed May 30, 2012.
[64] Doc. No. 147, filed May 29, 2012.
[65] Doc. No. 154, filed June 4, 2012.

Obviously, this was new information and a new position that came as a surprise to SCBT and its attorneys. As had been relayed to the Court on various occasions, given the nature of the assigned special powers SCBT and its counsel has sought and obtained approval from the FDIC prior to the submission of any pleadings or proposed orders related to this matter. Prior to today's conference call, SCBT and its counsel had no reason to believe that the FIRREA claims process was inapplicable or that any liability for acts or omissions of BankMeridian flowed through to SCBT subject to the special powers. Based on the foregoing, it appears that portions of the Court's Summary Judgment Order may need to be modified.

SCBT and its undersigned wanted to bring this to the Court's attention before proceeding with any hearings or other proceedings regarding the appeal of the Summary Judgment Order and/or related orders.[66]

### The June 4, 2012 Hearing in Bankruptcy Court

A lengthy hearing followed within the hour after the filing of the SCBT Letter. The hearing was held before the record was transmitted to the District Court for consideration of the appeal and approximately seven months after the summary judgment hearing.[67]  Wicker, counsel for SCBT and counsel for ESI were present. The Court questioned all parties about various matters, including the effect of the SCBT Letter on the proceedings and the scope of any assumption of liability, how that assumption impacts the FIRREA claims process and application of § 1823 as a shield to liability, and regarding how the SCBT Letter affects pursuit of any claims against BankMeridian or its assets. The parties provided few, if any, answers.

At the same hearing, the Court granted the request of ESI's counsel to withdraw as all agreed that there was a dispute between Wicker and counsel as to how they should proceed in representing the interests of ESI.[68]  This Court then entered an Order Granting Motion for Stay Pending Appeal ("Stay Order") as a result of the SCBT Letter.[69]  On the record the Court suggested to the parties that Wicker dismiss the appeal and that SCBT agree to allow this Court to review the February 29, 2012 Summary Judgment Order given the SCBT Letter, or take some

---

[66] *Id.*
[67] Fed. Rule of Bankr. Proc. 8005 requires that the stay request ordinarily be directed to the bankruptcy court.
[68] Doc. No. 156, filed June 6, 2012.
[69] *See* Doc. No. 157, Order Granting Motion for Stay Pending Appeal, filed June 6, 2012.

similar action. Despite this suggestion, the appeal proceeded. No further relief was requested from the Bankruptcy Court at that time and the record on appeal was transmitted to the District Court on July 19, 2012.[70]   The Stay Order stayed the effect of the April 19, 2012 Order while the appeal was pending.[71]

### Proceedings in the District Court

The District Court promptly entered an order notifying the parties of the bankruptcy appeal and directing Wicker to file a brief within fourteen days.[72]   However, instead of filing a brief, Wicker filed a Motion to Remand to the Bankruptcy Court in light of new evidence.[73] Subsequently, SCBT filed a Motion to Dismiss the appeal as a result of Wicker's failure to timely file a brief, even though he was granted an extension of time to do so.[74]   In Wicker's response to the Motion to Dismiss he recognized that ESI may not be a party to the appeal since he filed the appeal *pro se,* and he requested more time to find counsel for ESI.[75] On January 14, 2013, the Honorable Timothy M. Cain entered an order denying SCBT's dismissal request and granting Wicker's remand motion.[76]   The Order found: "While it appears that despite the new evidence, Wicker's claims may be barred by § 1823(e), as noted by the Bankruptcy Court in a footnote in her order, the court declines to rule on this prior to the Bankruptcy Court's revisions,

---

[70] Doc. No. 160.
[71] Doc. No. 157, filed June 6, 2012. The appeal is no longer pending so the stay is now inapplicable.
[72] C/A No. 7:12-cv-01958-TMC, Doc. No. 34, filed July 19, 2012.  *See also* Doc. No. 42, filed August 7, 2012 (The District Court then granted Wicker an extension to file the brief until August 27, 2012.  However, Wicker never filed the brief.).
[73] *Id.* at Doc. No. 46, filed August 27, 2012.  This document was filed by "Defendant, Steven R. Wicker" and signed by Wicker individually.
[74] *Id.* at Doc. No. 48, filed September 12, 2012.
[75] Doc. No. 166, Exhibit D.
[76] *Id.* at Doc. No. 64, Order Ruling on Report and Recommendation, filed January 14, 2013; *see also* Doc. No. 57, Report and Recommendation, filed November 15, 2012 (The Honorable Jacquelyn D. Austin recommending that SCBT's Motion to Dismiss the appeal be granted and Wicker's Motion to Remand be denied, but The Honorable Timothy M. Cain declined to adopt this recommendation opting for remand instead); *see also* C/A No. 09-80118-hb, Doc. No. 163, filed January 14, 2013.

if any, to the order granting SCBT summary judgment."[77]   When the matter was returned to this

Court on remand in January of 2013, only "Steven R. Wicker" was listed as an appellant.

### Wicker's August 27, 2012 Motion to Reconsider

As discussed in the District Court's Order, Wicker filed a Motion to Reconsider All

Rulings/Judgments Upon Remand from the Appellate Court in Light of New Evidence ("Wicker

Motion")[78] in this Court in August of 2012 while the appeal was pending in the District Court.

The Motion is very brief:

> *Defendant, Steven R. Wicker, would respectfully request Reconsideration of all Rulings/Judgments in the above case in light of new evidence provided by Plaintiff and attached hereto.*
> > *a) To the extent necessary with regard to Earth Structures Inc., Steven R. Wicker, and Ultra Holdings, LLC.*
> > *b) Remand of claims to the Spartanburg Master-in-Equity concerning the properties of Ultra Holdings, LLC*
> > *c) With regards to personal judgments against Steven R. Wicker*
> > *d) With regards to Legal Representation of Earth Structures, Inc. and Ultra Holdings, LLC giving defendant time to find new legal counsel*

The document is signed by Wicker, individually and it attaches a copy of the Motion for Remand

filed in District Court and the SCBT Letter.  No legal authority or further grounds are provided.

After the District Court's remand to this Court approximately five months later, an Order was

entered providing that any documents supporting the Wicker Motion must be filed on or before

February 5, 2012.[79]   Subsequently, Wicker submitted a Memorandum in support.[80]   To date, no

appearance has been made by counsel on behalf of ESI. The only document submitted since

remand has been submitted and signed by Wicker, *pro se*. The last appearance on behalf of

counsel for ESI was made at the June 4, 2012 hearing. Wicker's Memorandum begins "COMES

---

[77] *Id.* at Doc. No. 64, Order Ruling on Report and Recommendation, filed January 14, 2013.

[78] Doc. Nos. 162 and 166. This Motion attaches a copy of the Motion for Remand filed in the District Court. It is filed by "Defendant, Steven R. Wicker" and signed by Wicker individually.

[79] Doc. No. 164, filed January 18, 2013.

[80] Doc. No. 166, filed February 5, 2013. Large portions of this document appear to be copies of ESI's Response to SCBT, N.A.'s Motion for Summary Judgment and Memorandum in Opposition, Doc. No. 106 filed by ESI's counsel in December of 2011. However, Wicker changes "ESI" to "Wicker" or "SRW" or "ESI/(SRW)" as needed.

NOW the Debtor Steven R Wicker (SRW) by and through its undersigned counsel, who hereby submits this Memorandum in Support of Steven R Wicker's Motion to Reconsider[.]"

Wicker is not a "Debtor" in any proceeding in this Court, and despite reference to "undersigned counsel" the document is signed by Wicker, "Pro SE" as an individual. Wicker states that he

> *asks the Court to reconsider any and all prior rulings which may have been affected by the banks [sic] failure to submit evidence of its position with respect to owning liability for the loans in this case. While SRW admits freely that SCBT, N.A., did not become involved in the loans in question until the summer of 2011, SCBT, N.A., has voluntarily subjected itself to potential liability for SRW's defenses and counterclaims in this matter by its choice to become a party and pursue claims against certain Defendants based upon loans it acquired following Bank Meridian's failure.*

Much of the remainder of Wicker's Memorandum is an attempt to re-litigate the summary judgment matter in its entirety on the underlying facts, not as a result of new evidence. He also levels allegations against the attorneys involved in this case, including counsel for ESI.

SCBT responded to Wicker's filing, arguing that Wicker cannot meet the requirements of Rules 59(e) or 60(b).[81]  SCBT further argues that "[t]he SCBT Letter does not contain nor can it be construed as new evidence, it merely advises the Court of the FDIC's position as to whether or not the FIRREA claims process applied to Defendants' counterclaims against BankMeridian." SCBT argues that even given the SCBT Letter Wicker cannot prevail at trial on his claims and defenses as a matter of law. Overall, the pleadings provide the Court with little information in this record to explain the meaning of the SCBT Letter.

---

[81] Doc. No. 167, filed February 19, 2013. Rules 59 and 60 are made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9023 and 9024. Rule 9023 provides that "Rule 59 F.R.Civ.P. applies in cases under the Code. A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment." Rule 9024 provides that Rule 60 applies in cases under the code, with limited exceptions that are not applicable here.

## DISCUSSION AND CONCLUSIONS OF LAW

### Rule 59(e)

An earlier judgment may be amended pursuant to Fed. R. Civ. P. 59(e) for the following reasons: (1) to accommodate an intervening change in the controlling law, (2) to account for previously unavailable evidence, or (3) to prevent manifest injustice. *See Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir. 1993); *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).   "In general 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Id.* (quoting 11 Wright et al., *Federal Practice and Procedure,* § 2810.1, at 124 (2d ed. 1995)).   A party's mere disagreement with the Court's ruling does not warrant a Rule 59(e) motion. *See Hutchinson,* 994 F.2d at 1082 (citing *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 (S.D. Miss. 1990)).   A motion pursuant to Rule 59(e) must be filed by movant within fourteen days after entry of the judgment. *See* Fed. R. Bankr. P. 9023.

SCBT argues that Wicker failed to file a timely motion pursuant to Rule 59(e).[82]   It is true that Wicker, individually, did not file any pleading or present any challenge to the February 29, 2012 Summary Judgment Order or its effect prior to the expiration of the period set forth in Rule 59(e).

ESI did file a timely request for relief, through counsel. The Court denied the requested relief in the April 19, 2012 Order.[83]   Thereafter, counsel for ESI did not pursue the matter further

---

[82] The motion must be filed within fourteen days after entry of the judgment. See Rule 9023 and 9006.  Rule 9023 was amended effective December 1, 2009, to change the time for filing from ten to fourteen days. The time period under Rule 59 was changed from thirty to twenty eight days as well, but Rule 9023 makes the fourteen day period the appropriate time in bankruptcy proceedings.

[83] Doc. No. 135, Order Denying Motion to Alter or Amend Judgment and Motion for Relief from Summary Judgment Order, and Remanding Remaining Causes of Action, filed April 19, 2012.

in any way, but instead moved to withdraw after the Rule 59(e) deadline expired.    Wicker,

individually, filed a Notice of Motion to Reconsider[84] within the time restrictions of Rule 59(e)

stating that it was filed on behalf of Wicker and ESI.    However, the Court previously disposed of

that request by the Order Denying Motion to Reconsider entered on May 7, 2012. [85]    No

challenges to that order followed.

Therefore, no relief can be granted pursuant to Rule 59(e) as there is no timely request

pending before the Court. Failure to make a request within the appropriate timeframe bars relief

under Rule 59(e). *See e.g. Miracle of Life, L.L.C. v. N. Am. Van Lines, Inc.*, 447 F. Supp. 2d 519,

521 (D.S.C. 2006) (finding that "[u]ltimately, because the filing period in Rule 59(e) is

mandatory and jurisdictional, and because Plaintiffs' failed to file their motion within that time

period, the court is without jurisdiction to entertain Plaintiffs' motion to reconsider").

### Rule 60(b)

The Court can view any request to reconsider, alter or amend as a request made under

Fed. R. Civ. P. 60(b).    The Court may relieve a party from a final judgment or order for the

following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not
>     have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud    (whether    previously    called    intrinsic    or    extrinsic),
>     misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on
>     an earlier judgment that has been reversed or vacated; or applying it
>     prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

"In order to obtain relief under Rule 60(b), the moving party must demonstrate at least

one of the six grounds for relief listed in Rule 60(b)."    *Robinson v. Wix Filtration Corp. LLC*,

---

[84] Doc. No. 137.
[85] Doc. No. 140.

559 F.3d 403 (4th Cir. 2010).  Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. *House v. Secretary of Health and Human Services,* 688 F.2d 7, 9 (2d Cir.1982); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir.1981).  Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances. *Ben Sager Chemicals Intern. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir.1977); *Hoffman v. Celebrezze*, 405 F.2d 833, 835 (8th Cir.1969); *Rinieri,* 385 F.2d at 822. A motion seeking such relief is addressed in the sound discretion of the Court with appellate review limited to determining whether that discretion has been abused. *Griffin*, 722 F.2d at 680; *Matter of Emergency Beacon Corp.,* 666 F.2d 754, 760 (2d Cir.1981).

"In determining whether a judgment should be set aside under the standard of Rule 60(b), the Court must engage in a two-pronged process. First, the moving party must satisfy three requirements: (1) the motion must be timely filed; (2) the moving party must have a meritorious defense to the action; and (3) the setting aside of the judgment must not unfairly prejudice the nonmoving party.  Once the requirements of the first prong have been met, the moving party must next satisfy one of the six grounds for relief set forth in Rule 60(b)." *See In re Air S. Airlines, Inc.*, 249 B.R. 112, 115-16 (Bankr. D.S.C. 2000) (internal citations omitted).

The only motion before the Court to satisfy Rule 60(b) is the Wicker Motion filed on August 27, 2012.[86]  While Wicker may represent himself in this lawsuit, there is no evidence in this record that Wicker is qualified to represent other parties under applicable law. *See e.g. Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381 ("The rule is well established that a corporation is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel."); *In re Tamojira*, 20 Fed.Appx. 133 (4th Cir. 2001) (finding that "it is well settled that a corporation must be represented by an attorney in federal court") (internal citations

---

[86] Doc. No. 162.

omitted).    The record reflects that Wicker is fully aware that he can only represent himself, yet

he has continued to file documents captioned and signed individually that demand or hint of

relief for ESI and others .[87]   Given that ESI and any other Defendant have had more than enough

time to obtain new counsel since the rulings made in February and April of 2012, as a result of

the failure of any appropriate pleading filed on behalf of ESI or any Defendant other than

Wicker to challenge the Court's prior Orders, and pursuant to applicable law, the Court finds that

only Wicker, individually, is due any consideration as a result of the Wicker Motion. This

conclusion seems obvious from the pleadings filed, but given Wicker's appearance *pro se*, the

Court has devoted a great deal of review and analysis to this issue in an extraordinary effort to

reach a fair result. The conclusion: Wicker is the only movant.

ESI and any others had ample opportunity to pursue relief post-judgment and having

failed to do so Rule 60(b) "may not be used as a substitute for a timely appeal." *United States v.

O'Neil*, 709 F.2d 361, 372 (5th Cir.1983); *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 822 (2d

Cir.1967).    This Court cannot find that ESI is entitled to the extraordinary remedies of Rule

60(b) when that party has failed to pursue any request to reconsider or any appeal.    *See e.g.

Dowell v. State Farm Fire & Cas. Auto. Ins. Co.,* 993 F.2d 46, 48 (4th Cir.1993) (holding that

the "voluntary, deliberate, free [and] untrammeled choice" not to appeal the original judgment or

order cannot establish a basis for Rule 60 relief) (quoting *Ackermann v. United States*, 340 U.S.

193, 200, 71 S.Ct. 209, 95 L.Ed. 207 (1950) (alteration in original)); *In re Burnley*, 988 F.2d 1, 3

(4th Cir.1992) ("A Rule 60(b) motion may not substitute for a timely appeal").    Absent an

appropriate and timely motion and prosecution thereof, the extraordinary relief provided under

---

[87] *See, e.g.*, Recording from Hearing on Motion to Withdraw as Counsel for ESI held June 4, 2012; Doc. Nos. 166-5,
Copy of Response to SCBT's Motion to Dismiss (Appellant's Appeal "Court should grant ESI the right to appeal as
well and time to find counsel and file the necessary documents to proceed."); Doc. 162, filed August 27, 2012
(Wicker stated he needed "time to find new legal counsel" to represent ESI and Ultra Holdings); *see also* C/A No.
7:12-cv-01958-TMC, Doc. Nos. 37, 40, 44, and 48.

Rule 60(b) must be denied as to any other party.

Applicable law allows, but does not require, the Court to raise Rule 60(b) *sua sponte* after notice and an opportunity for hearing. *See In re Jack Kline Co., Inc.*, 440 B.R. 712, 729 (Bankr. S.D. Tex. 2010). However, nothing in this record motivates this Court to do so. All parties to this proceeding had notice of the relevant judgments and the SCBT Letter long ago, and more than nine months have passed since ESI's counsel was allowed to withdraw. Any relief requested on behalf of Ultra must clearly be denied. That Defendant has not made a proper appearance in this case since 2011. On these facts the court cannot find exceptional circumstances warranting relief from a judgment *sua sponte*.

### Appling Rule 60(b) to the Wicker Motion, the February 29, 2012 Summary Judgment Order is Vacated as to Wicker Only

Turning now to the substance of the Wicker Motion, the Court finds that the SCBT Letter is previously unavailable evidence. The letter itself recognizes that SCBT's position and defenses in this lawsuit are based on a contract between SCBT and the FDIC. It further recognizes that some of the contract terms, or the interpretation of those terms by the FDIC, were not previously known or understood even by SCBT's counsel until the letter was filed. This is sufficient cause to include the SCBT Letter in the summary judgment record for Wicker and to review the February 29, 2012 Summary Judgment Order as it relates to Wicker only. With the SCBT Letter, the record indicates that the Wicker Motion is premised on a meritorious defense to summary judgment, that there is no prejudice to the opposing party because SCBT contributed to the confusion in this matter, that Wicker timely requested relief thereafter, and the SCBT Letter presents exceptional circumstances given Wicker's timely motion.

The February 29, 2012 Summary Judgment Order granted relief in favor of SCBT, primarily as a result of the application of § 1823(e). The SCBT Letter added to the summary

judgment record gives the Court some evidence that some form of liability could have been assumed by SCBT. Although there is insufficient information to determine the exact impact, it is enough to deny summary judgment against Wicker upon reconsideration. Adding the SCBT Letter to the summary judgment record, the Court simply cannot determine how any such contract terms interact with § 1823(e).  In light of the SCBT Letter, the Court can no longer say that a review of the record indicates that *no* act of SCBT could give rise to liability for Wicker's counterclaims asserted in this litigation, and further the Court cannot determine how the defenses asserted by Wicker may be affected until the details of any assumption are understood. Summary judgment is not appropriate if there is some material fact in dispute regarding the application of § 1823(e) to bar counterclaims and defenses asserted by Wicker.  Absent an assumption of liability it appears that §1823(e) would control, but given the SCBT Letter, any potential assumption of liability by SCBT and the effect on the application of § 1823(e) has not been sufficiently explained.

The Court notes that the meritorious defense relates to the summary judgment request and is analyzed only on the record before the Court at this time.  This is a far lesser burden than Wicker will face on the merits of the matter at trial.

While the Court finds that the SCBT Letter by itself provides sufficient grounds to take another look at the February 29, 2012 Summary Judgment Order as it relates to Wicker, that letter is the only new evidence the Court considered. To the extent that Wicker seeks to rely on any prior submissions of purported new evidence,[88] none have been adequately authenticated or properly explained with admissible evidence even now—over a year after the Brief was filed, seven months after the SCBT Letter and two months after remand.  The Memorandum filed in support of the Wicker Motion  attaches various documents, but none except the SCBT Letter

---

[88] *See* Doc. No. 166, Memorandum and Exhibits B-I, filed February 5, 2013.

appear to involve any new and previously unattainable evidence.[89]

As a result of the Wicker Motion, the February 29, 2012 Summary Judgment Order will be vacated as to Wicker only. No other party has properly pursued further relief and therefore, all prior orders discussed herein remain in full force and effect as to any other Defendants.

This means that Ultra, ESI and any party other than Wicker, remain bound by the prior decisions of this Court. No counterclaims or defenses can be asserted by anyone but Wicker. Wicker may continue to pursue those defenses and counterclaims to the extent that they are applicable to him, individually. As stated above, when properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. *House v. Secretary of Health and Human Services,* 688 F.2d 7, 9 (2d Cir.1982); *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401 (5th Cir.1981). On these facts the scales tip in favor of honoring the finality of the judgment and against parties that have not timely and properly challenged the final orders and judgment.

---

[89] The first notice on this docket of BankMeridian's demise and the potential assertion of special powers as a bar to recovery was filed on October 14, 2011. *See* Doc. No. 86. The Order on the Motion to Substitute Plaintiff was entered on October 25, 2011 (Doc. No. 96) and the Summary Judgment hearing was held on December 15, 2011. Wicker's Motion attaches the following in the order they appear on the Court's docket: 1) The SCBT Letter; 2) A typed note on FDIC letterhead dated March 27, 2012 regarding documents produced; 3) A Business Records Affidavit dated March 27, 2012, stating only that the affiant is a custodian of records and that certain records (not identified specifically) are originals or exact duplicates. No further explanation is provided; 4) A copy of a letter from counsel for ESI to an FDIC employee in Jacksonville, Florida, dated March 26, 2012. The letter and enclosed subpoena attempt to require the appearance of the FDIC at a hearing scheduled for the next day, March 27, 2012; 5) A Memorandum marked "confidential" on FDIC letterhead dated July 29, 2011, discussing BankMeridian and inherited litigation; 6) The Affidavit of Shane W. Rogers dated October 20, 2011; 6) the Memorandum of Purchase and Assumption Agreement and Assignment dated August 26, 2011 and recorded October 21, 2011 on the public records in Mortgage Book 4509, Page 668 in the Spartanburg County Register of Deeds; 7) A copy of Wicker's Response to SCBT's Motion to Dismiss; 8) Affidavit of William M. Aiken, III, dated March 13, 2012; 9) Copy of an Appraisal dated May 10, 2011 along with letter from Appraiser dated May 18, 2011 and all or a portion of an Appraisal dated September 22, 2011; 10) Print outs of emails dated in April of 2012 between Wicker and counsel for ESI evidencing disputes; 11) Similar emails from May of 2012; 12) A copy of a proposed consent order allowing withdrawal of counsel for ESI; 13) An email from June 4, 2012 between Wicker and counsel for ESI; and 14) Emails from August and July of 2008 between Wicker and BankMeridian. At the various hearings that came after the December 2011 summary judgment hearing there was no showing that any of this information, other than the SCBT Letter, could not have been obtained prior to the summary judgment hearing if a timely request had been made. Wicker's Motion does not explain why the documents are "new evidence." *See also* recording of hearing held June 4, 2012, wherein the Court asked for an explanation from ESI and Wicker about the failure to ask for or obtain documents prior to the summary judgment hearing.

**All Remaining Disputes in this Lawsuit are Remanded to State Court**

Pursuant to 28 U.S.C. § 1452(b)[90] a proceeding may be remanded to state court based on equitable grounds.  When considering equitable remand, bankruptcy courts generally "consider judicial economy, comity, respect for state court capabilities, and the effect on administration of the estate."  *Corley v. Salinas (In re Salinas)*, Adv. Pro. No. 06-80115 (Bankr. D.S.C. 2006) (quoting *In re Olympia Holding Corp.*, 215 B.R. 254, 256 (Bankr. M.D. Fla. 1997)).

The Court previously returned the remaining portions of this lawsuit to state court for completion in the April 19, 2012 Order. This finding remains appropriate even after the relief granted to Wicker herein. The lawsuit was removed to this Court from state court due only to the involvement of Chapter 11 Debtor ESI.  Thereafter, the bulk of this lawsuit was quickly remanded to state court because state law claims were presented, and also because this Court was not the proper forum to determine all issues raised in the original suit involving state law foreclosure, claims against non-debtor parties and recovery of collateral that was not property of ESI. All matters involving ESI and others that must be resolved by this Court are now concluded. Although various disputes involving Wicker, individually, and Plaintiffs remain after entry of this Order, and although resolution of the disputes could result in a recovery in his favor, those matters do not directly impact administration of a bankruptcy case. Wicker may continue to seek recovery for himself or reduction of any personal contractual liability as a result of his defenses and counterclaims in state court. Further, SCBT may continue to pursue its remaining claims in state court. The state court can determine the amount of any debts in question owed, free of ESI's counterclaims and defenses as pursuit thereof by any party other than Wicker was ended by the February 29, 2012, Summary Judgment Order.

---

[90] 28 U.S.C. § 1452(b) provides in part: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

Payment of any amount owed by ESI is to be made pursuant to the terms of the confirmed Chapter 11 plan and pursuit of any collateral owned by ESI likewise is governed by the plan. The contractual terms of that plan bind the parties as they would any debtor and creditor post-confirmation and post-bankruptcy and can be incorporated by the state court into any rulings to be issued in the remaining actions. That court can liquidate collateral of parties other than ESI, if it determines such an act is appropriate, and therefore is in a better position to determine the final balance of the debt after application of any proceeds.  While this Court does not have the ability to litigate all issues remaining in this lawsuit, the state court does. Therefore, all remaining matters should be returned to the state court pursuant to 28 U.S.C. § 1452(b). The remaining matters do not involve active bankruptcy case administration. Therefore, the federal court's involvement in this matter should end.

**IT IS THEREFORE, ORDERED, THAT**

1.  Any Relief requested pursuant to Fed. R. Civ. P. 59(e) to alter or amend a judgment, made applicable to this proceeding by Fed. R. Bankr. P. 9023, is hereby **DENIED**;

2.  Any relief requested pursuant to Fed. R. Civ. P. 60(b), made applicable to this proceeding by Fed. R. Bankr. P. 9024, is hereby **DENIED** except as expressly granted herein;

3.  Defendant Steven R. Wicker's Motion to Reconsider All Rulings/Judgments Upon Remand From the Appellate Court in Light of New Evidence, filed August 27, 2012,[91] pursuant to Fed. R. Civ. P. 60(b), made applicable to this proceeding by Fed. R. Bankr. P. 9024 is **GRANTED IN PART** to allow Wicker relief from the final judgment and order of this Court entered on February 29, 2012, titled Summary

---

[91] Doc. Nos. 162 and 166.

Judgment Order.[92]  The Order shall not apply to any claims against, defenses asserted by or counterclaims pursued by Wicker, individually, in this lawsuit;

4.  Except as expressly granted in this document, any additional relief requested in any Motion pending before this Court  is **DENIED** and this and prior orders remain in full force and effect as to all other Defendants;

5.  All remaining causes of action in this lawsuit are hereby **REMANDED** to the Spartanburg County Court of Common Pleas in the State of South Carolina pursuant to 28 U.S.C. § 1452(b).

**IT IS SO ORDERED.**

---

[92] Doc. Nos. 119 and 120.